**Scotty D. BOHRN and Jacqueline M. Bohrn, Respondents,**

v.

**Terry and John KLICK, Appellants.**

**No. WD 69192.**

Missouri Court of Appeals,
Western District.

Jan. 20, 2009.

James C. Dowling, Fulton, MO, for Appellant.

Robert James Seek, Eldon, MO, for Respondent Scotty Bohrn.

Jacqueline Bohrn, Fulton, pro se.

Before THOMAS H. NEWTON, C.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellants Terry and John Klick appeal from the trial court's dismissal of their motion seeking custody of Respondent Scotty and Jacqueline Bohrn's minor children. We reverse, and remand for further proceedings consistent with this opinion.

## I. Facts

A Judgment dissolving the marriage of Scotty Bohrn ("Father") and Jacqueline Bohrn ("Mother") was entered by the Miller County Circuit Court on August 25, 2005. The Judgment awarded Mother and Father joint legal and physical custody of the parties' two minor children, with Mother having the majority of custodial time.

After the decree was entered, Mother and the children came to stay with Terry and John Klick. Terry Klick is the children's maternal grandmother, and is married to John Klick. When Mother thereafter left the Klicks' home, the children remained behind. The Klicks filed a Petition for Guardianship of the minor children in the Probate Division of the Circuit Court of Callaway County, and were granted an order of temporary guardianship on or about September 9, 2005. According to the Klicks' fact statement, which is undisputed by Father (Mother having filed no brief), the minor children resided with the Klicks until February 2006, at which time they were returned to Mother pursuant to a Writ of Habeas Corpus issued by the trial court. While the children resided with the Klicks, the Klicks sought counseling assistance for them. Mary Beth DeBrodie provided those counseling services.

On December 30, 2005, while the children were residing with the Klicks, Father filed a Petition for Modification of Orders for Child Custody and Support. The Petition alleged that the Klicks had denied him contact with his children, and requested that they be joined as parties. Father asked that the court order that joint legal and physical custody of the children be continued in the natural parents, and that the court order that any contact or visitation between the children and the Klicks be only with the approval of Mother and Father, or as otherwise ordered by the court. That same day, the trial court issued an order joining the Klicks as parties.

The Klicks answered Father's Petition for Modification on January 30, 2006. On July 10, they filed a Counter–Motion to Modify, in which they alleged that both Mother and Father were unfit, unsuitable, and unable to adequately care for the children, and requested an order awarding them primary physical custody of the children. On September 8, 2006, Father filed a First Amended Petition for Modification of Orders for Child custody and Support, in which he alleged that Mother was unfit and unable to adequately care for the children, and requested the court to award him sole legal and physical custody.

During trial, the Klicks called Ms. DeBrodie, who had counseled the children while they resided with the Klicks, as a witness. Mother objected on the basis of privilege, arguing that she had not authorized Ms. DeBrodie's disclosure of any information developed during counseling. Father joined in the objection. During a voir dire examination, Ms. DeBrodie indi-

cated that she is a licensed clinical social worker. She explained that she met with the children twice in April of 2005, and then on a fairly consistent basis from September 2005 through January or February of the following year, while the Klicks had guardianship. Ms. DeBrodie indicated that she could distinguish events which occurred before August 2005, when the original dissolution decree was entered, and events occurring thereafter.

Following this voir dire, the trial court asked the guardian *ad litem*: "Are you exerting the privilege on behalf of the children or are you not?" When the guardian *ad litem* responded in the affirmative, the court sustained the privilege objection. The Klicks then made an offer of proof as to Ms. DeBrodie's proposed testimony.

At the conclusion of the Klicks' evidence, Father moved for an Order dismissing the Klicks' Counter–Motion, on the ground that they had failed to establish both parents unfit. Mother and the guardian *ad litem* joined in Father's motion, which the trial court sustained. The court thereafter entered a judgment modifying Father and Mother's custody arrangements based on their stipulation and the guardian *ad litem's* recommendation. The judgment apportioned $2,300 of the guardian *ad litem's* $3,300 in fees to the Klicks. This appeal follows.

## II. Analysis

### A. Standard of Review

In a child custody modification case, our standard of review is governed by the *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In re McIntire*, 33 S.W.3d 565, 568 (Mo.App. W.D.2000). Thus, we must affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* While "[t]he admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion," *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo. banc 2000), the trial court necessarily abuses its discretion where its ruling is based on an erroneous interpretation of the law. *Stidham v. Stidham*, 136 S.W.3d 74, 78 (Mo.App. W.D.2004).

### B. The Trial Court Erred in Excluding Ms. DeBrodie's Testimony on the Basis of Privilege

In their first Point, the Klicks argue that the trial court erred in excluding the testimony of the licensed clinical social worker who provided counseling services to the children, Mary Beth DeBrodie, on the basis of privilege. We agree.

Section 337.636[1] recognizes a privilege for communications between licensed clinical social workers and their clients. The privilege is, however, subject to certain exceptions. In pertinent part, § 337.636 provides:

> Persons licensed under the provisions of sections 337.600 to 337.689 may not disclose any information acquired from persons consulting them in their professional capacity, or be compelled to disclose such information except:
>
> ....
>
> (5) When the licensee is called upon to testify in any court or administrative hearings concerning matters of adoption, adult abuse, child abuse, child neglect, or other matters pertaining to the welfare of clients of the licensee[.]

1. All statutory references are to the Revised Statutes of Missouri 2000 and Cumulative Supplement 2007.

Under § 337.636.5, any privilege which otherwise attaches to communications with a licensed clinical social worker is simply inapplicable where "matters of ... child abuse, child neglect, or other matters pertaining to the [client's] welfare" are at issue.[2] In addition, § 337.689 provides:

> Nothing in sections 337.600 to 337.689 shall be construed to prohibit any person licensed pursuant to the provisions of sections 337.600 to 337.689 from testifying in court hearings concerning matters of adoption, adult abuse, child abuse, child neglect, or other matters pertaining to the welfare of children or any dependent person....

Although not cited by the parties, § 210.140 also appears relevant—if not dispositive—here:

> Any legally recognized privileged communication, except that between attorney and client or involving communications made to a minister or clergyperson, shall not apply to situations involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required or permitted by sections 210.110 to 210.165, to cooperate with the division in any of its activities pursuant to sections 210.110 to 210.165, or to give or accept evidence in any judicial proceeding relating to child abuse or neglect.

These provisions limit the scope of any social worker privilege; by their terms, "[s]ection 210.140[, as well as §§ 337.636.5, and 337.689,] prevent[ ] a party from invoking the physician-patient privilege in any custody proceedings involving known or suspected child abuse or neglect." *Seyler v. Seyler,* 201 S.W.3d 57, 63 (Mo.App. E.D.2006); *In re Marriage of Daneshfar,* 953 S.W.2d 95, 102 (Mo.App. S.D.1997) (§ 210.140 "abrogat[es] ... the privilege" in specified circumstances).[3]

■ This proceeding involved "matters of ... child abuse, child neglect, or other matters pertaining to the welfare of children," § 336.689, rendering the licensed clinical social worker privilege inapplicable despite Mother's, Father's, and guardian *ad litem's* efforts to invoke it. The Klicks' Counter–Petition sought third-party custody of the Bohrns' children on the basis "that each parent is unfit, unsuitable, or unable to be a custodian." § 452.375.5(5). During her offer of proof, Ms. DeBrodie indicated that the children had witnessed "lots of domestic violence between Mom and Dad." In one incident, Ms. DeBrodie stated that the children had witnessed Father make Mother lick the floor to apologize for her actions. She testified that the children had also been the targets of Father's violence, that the older child reported that he bore a scar over one of his eyes where Father had hit him, and that Father had punched him on another occasion. Ms. DeBrodie stated that the children were afraid of Father's "problem" alcohol consumption, and that he frequently drank alcohol while he was driving with them as passengers in the car. Ms. DeBrodie also

2. We note that, unlike § 337.636.5, other provisions of § 337.636 make the privilege subject to the control of a particular party in specified circumstances. *See* §§ 337.636.1; 337.636.4.

3. *Seyler* observes that, "[i]n dissolution of marriage cases, Missouri courts have utilized the following definition of abuse":

> any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse.

201 S.W.3d at 63 n. 9 (citing § 210.110(1); *Pilger v. Pilger,* 972 S.W.2d 628, 632 (Mo.App. S.D.1998)).

indicated that the children were afraid to speak freely to her because they feared retribution from Father.[4]

Here, the offer of proof presented evidence which was plainly relevant to the Klicks' allegations that Father was an unfit custodian of the children. Moreover, from our review of the record, Ms. DeBrodie's proposed testimony was not cumulative of other evidence admitted at trial concerning Father's fitness.[5]

Ultimately, the trial court as the trier of fact must decide whether the Klicks established a claim for third-party custody under § 452.375.5(5) based on a "find[ing] that each parent is unfit, unsuitable, or unable to be a custodian." That determination cannot be made, however, in a proceeding in which non-privileged, non-cumulative, material evidence is erroneously excluded.

> The trial court has an affirmative duty in ascertaining the best interests of the child. In order to make a sound and prudent judgment, the judge should be able to have at his/her disposal all available pertinent evidence in determining child custody. The legislature has given to the courts the tools to deal with this pervasive issue of child abuse and neglect and the trial courts should use them.

*Daneshfar,* 953 S.W.2d at 102 (quoting *Roth v. Roth,* 793 S.W.2d 590, 592 (Mo. App. E.D.1990)).

Accordingly, we reverse and remand the case to the trial court for further proceedings, where it will "have at its disposal all available and pertinent evidence in determining child custody." *Seyler,* 201 S.W.3d at 64.[6]

All concur.

4. Father also objected to testimony by Ms. DeBrodie concerning "anything regarding th[e] visit or counseling session" that occurred "prior to the court's last determination as to who should have custody and the status of the parents." While evidence presented in a proceeding to modify a dissolution decree is typically limited to post-dissolution conduct, *see generally* § 452.410, Ms. DeBrodie was advised to limit her testimony accordingly, and indicated that she was able to do so. In any event, to the extent Ms. DeBrodie's statements may have related to pre-dissolution events, such testimony may be admissible where it was not before the court when the original decree was entered, or is relevant to parental fitness. *See Lapee v. Snyder,* 198 S.W.3d 172, 174–76 (Mo.App. W.D.2006) (case remanded to consider evidence of pre-dissolution conduct not before the court at time of original dissolution decree); *J.P. v. P.W.,* 772 S.W.2d 786, 787 (Mo.App. S.D. 1989) ("evidence of prior conduct is admissible if relevant for the purpose of evaluating the fitness of a parent to have custody of children").

5. Ms. DeBrodie also offered testimony relevant to Mother's fitness. Because her proffered testimony would be relevant even if it related to the fitness of only one of the parents, we have confined our discussion to her proposed testimony concerning Father.

6. Because the case must be remanded for further proceedings, we do not address the Klicks' second Point, which argues that the trial court erred in sustaining Father's Motion to Dismiss their Counter–Petition at the close of their evidence.