770 S.W.2d 372 (1989)
O.J.G., Plaintiff-Appellant,
v.
G.W.G., Defendant-Respondent.
Nos. 54090, 54689.
Missouri Court of Appeals, Eastern District, Division Two.
April 4, 1989.
Motion for Rehearing and/or Transfer Denied May 2, 1989.
Application to Transfer Denied June 13, 1989.
*374 Ann P. Faitz, North Little Rock, Ark., for plaintiff-appellant.
Claude C. Knight, St. Charles, for defendant-respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.
PUDLOWSKI, Chief Judge.
Appellant appeals from a joint custody award pursuant to the original decree of dissolution and from a subsequent modification of the original decree. These two appeals were consolidated for purposes of this opinion. Appellant and respondent were married in 1973. They resided in St. Charles County until their marriage was dissolved in 1987. The parties had a good marriage until their daughter, C.P.G., was born in 1984. After the birth of C.P.G. the marriage began to deteriorate. Appellant began to exclude respondent from the raising of their child and the parties began to argue more. Allegations were also made that respondent had sexually abused C.P.G. and that respondent had physically abused appellant. Appellant subsequently moved to Hot Springs, Arkansas, with C.P.G. and remained there until the time of the dissolution proceedings.
As part of the dissolution decree the trial court awarded joint legal custody to both parents and ordered C.P.G. to be returned to Missouri. On appeal appellant contends that the trial court erred in granting joint custody and ordering C.P.G. to be returned to Missouri.
Appellant's first point on appeal is that the trial court erred in awarding joint legal custody of the parties minor child, C.P.G., because such custody is not in C.P.G.'s best interest. Appellant contends that the trial court should have awarded primary custody of C.P.G. to appellant and restricted visitation by respondent. Section 452.375 RSMo (1986) provides that the trial court should determine custody according *375 to the best interest of the child. Section 452.375 also defines joint legal custody as "parents shar[ing] the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority," and further defines joint physical custody as an award to "each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents." Whether to award joint custody in a particular case is in the discretion of the trial court. Joint custody is one of many solutions available to the trial court when trying to resolve a custody problem. Kline v. Kline, 686 S.W.2d 13 (Mo.App.1984). Moreover, deference is given to the trial court's findings on custody matters unless the appellate court is convinced the best interest of the child requires other action. Id.
Appellant argues that because the parties did not agree to joint custody it was not proper for the trial court to make such an award. Section 452.375 provides that the court may award joint legal custody but does not require that there be an agreement between the parties. Just because there is no agreement on joint custody, the court is not without authority to award it. Goldberg v. Goldberg, 691 S.W. 2d 312 (Mo.App.1985). The desire of the parents is only one of several factors to be weighed by the trial court in its sound discretion. Section 452.375(1).
Appellant contends that the award of joint custody was not proper in this case because the parties were not equipped to deal with each other as equal partners in C.P.G.'s care. The record indicates that respondent was more than willing to do what is necessary for the best interest of his daughter and in the process making the joint custody plan a workable arrangement. The Missouri courts have held that one of the parents should not be able to veto a joint custody award by failing to agree or failing to cooperate with the joint custody determination. Kline v. Kline, 686 S.W.2d 13 (Mo.App.1983).
Appellant further contends that the joint custody award is not proper because respondent physically attacked appellant and possibly sexually abused C.P.G. The trial court determined after a review of the entire record that those claims did not have merit. There is substantial evidence in the record to support this conclusion on the part of the trial court.
Concerning the physical attack, appellant and respondent both testified at trial and testified differently as to the events that occurred. Concerning the possible sexual abuse of C.P.G., the report of the attending physician at Cardinal Glennon Hospital indicated that the child had temporary swelling of the vaginal orifice. However, testimony was offered that such swelling usually occurs for three to seven days and that respondent had not seen his daughter for nineteen days prior to the examination. The only other evidence presented at trial concerning any sexual abuse were statements by the child. The record indicates that the child was prompted by appellant to make the statements. Due regard is given to the trial court's ability to judge the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. In court tried cases the judgment is presumed to be correct. Kornberg v. Kornberg, 688 S.W.2d 377 (Mo.App.1985). The appellate court is entitled to presume that the court studied the evidence thoroughly and ordered what was in the best interest of the child based on the superior opportunity of the trial court to determine the credibility, sincerity, and character of the witnesses, as well as other intangibles not revealed by the record. M.D.R. v. P.K.R., 716 S.W.2d 866 (Mo.App.1986).
There is nothing in the record to indicate that the trial court abused its discretion in awarding joint legal custody in this case. Moreover, this finding is supported by substantial evidence in the record.
*376 Appellant's second point on appeal is that the trial court erred in failing to grant appellant's request for a home study and to set forth a specific plan containing the terms of the joint custody arrangement. In regard to the home study, § 452.390 provides that "[t]he court may order an investigation." Moreover, this court has previously held that this section is not mandatory, but is most salutary. V.M. v. L.M., 526 S.W.2d 947 (Mo.App. 1975). Nothing in the record indicates the trial court abused its discretion in not awarding a home study.
Concerning the sufficiency of the joint custody plan, Section 452.375.4 provides that a joint custody decree "shall include a specific plan setting forth the terms of such custody." There are, however, no specific guidelines setting forth what must be included in the plan. Appellant cites a number of articles which set forth model joint custody plans the court should use. We agree that these plans are helpful but that the court should use a case by case approach to determine the best interest of the child and to tailor the plan to meet that interest. We can find nothing in the plan to indicate that the court abused its discretion in the plan it adopted. The plan appears to be designed to be flexible to gradually wean C.P.G. from her dependence on her mother. The plan provides for counselling for all of the parties and sets out the exact times for each parent to have physical custody. The plan also requires progress reports to be filed with the court and that the child be returned to Missouri. The plan before us is not a model joint custody plan but it fits the unique situation before us and serves the best interest of C.P.G. We find that the court's plan is specific enough under § 452.375.
Appellant's third point on appeal alleges that the trial court erred in ordering appellant to return C.P.G. to Missouri and not allowing appellant to remove C.P.G. to Arkansas. Appellant argues that it would be in the best interest of C.P.G. to remain in Arkansas because appellant has established a comfortable home and a proper environment in Arkansas. Appellant has part-time employment in Hot Springs and is living rent free with her mother.
Section 452.377 RSMo provides that a custodial parent may not change the residence from this state for more than ninety days without court order or written consent of the other parent. The court should allow removal of the child from the state if it is in the best interest of the child. Samuels v. Samuels, 713 S.W.2d 865, 868 (Mo. App.1986). However, the statute does not require the court to approve the removal simply on the motion of the parent. Id. The trial court indicated, in its order, that in the best interest of the child, she should receive counselling with both her natural mother and natural father. Evidence at trial indicated that the child was overly dependent upon appellant and needed to be weaned away from her. The record also indicates that appellant has systematically attempted to remove C.P.G. from respondent's life. Prior to the dissolution, appellant refused to allow the father to eat meals with C.P.G., refused to allow respondent to take C.P.G. to church; refused to allow respondent to read bedtime stories to C.P.G., and refused to allow respondent to play in the yard with C.P.G. unless appellant was present. After filing her petition appellant took C.P.G. to Arkansas and refused telephone contact between C.P.G. and respondent for any extended period of time. It is clear from the record and the order that the trial court thought that it was in the best interest of C.P.G. to have the love and affection of both parents and to have maximum contact with both parents. We must defer to this judgment. M.D.R. v. P.K.R., 716 S.W.2d 866 (Mo.App. 1986). The record also reflects that the trial court concluded that the best way to effectuate the best interest of C.P.G. was to require appellant to keep C.P.G. in the State of Missouri. We must also defer to the judgment of the trial court on this issue.
Appellant's fourth point on appeal is that the trial court abused its discretion in denying appellant's motion for a new trial because there existed newly discovered evidence showing that C.P.G.'s best interest *377 was at stake. The new evidence offered consisted of two psychologists' reports indicating that C.P.G.'s best interest would be served if she was in the custody of appellant and if respondent was not allowed to have contact with C.P.G. without supervision. This expert testimony was obtained after the dissolution hearing had been completed. There is nothing in the record to indicate why appellant was not diligent in acquiring this evidence prior to trial. It is an often cited rule in Missouri that motions for new trial on the basis of newly discovered evidence are addressed to the sound discretion of the trial judge, and are viewed with disfavor and are granted only in exceptional cases. City of Eureka v. Hall, 687 S.W.2d 917, 920 (Mo.App.1985). Moreover, the new trial motion must show: (1) the evidence has only recently been discovered; (2) due diligence would not have uncovered the evidence sooner; (3) the new evidence is so material it would probably produce a different result; (4) the new evidence is not cumulative; and (5) the object of the evidence is not to impeach the character or credit of a witness. Id.
Paragraph six of appellant's motion for new trial states, "[t]hat, since the trial of this cause, Petitioner has been provided with new evidence indicating that it would be in the minor child's best interest for any visits with respondent to be supervised and that the minor child could best overcome her trauma by staying with Petitioner in Arkansas." Appellant further states in her brief that "[t]hese additional expert opinions could not have been produced at trial since [appellant] and [C.P.G.] began seeing the psychologist after the trial." In a strict sense this statement reveals the "new evidence" did not exist at the time of the dissolution hearing. This statement and the record on the whole suggests that appellant disregarded due diligence in obtaining this expert testimony. Appellant obviously recognized that this type of testimony would be at issue in the case because she had other testimony concerning the same matters. A party is bound and presumed to know the points which will be at issue in the case and by omitting to procure evidence, that ordinary diligence would have uncovered on those points, any subsequent motion for a new trial shall be denied. Curtis v. Curtis, 491 S.W.2d 29 (Mo. App.1973). We can find nothing in the record to indicate that the trial court abused its discretion in denying appellant's motion for a new trial.
Appellant's fifth point is that the trial court erred in retaining jurisdiction over the custody of C.P.G. for one year and that on its own motion could modify custody without notice to the parties. The decree in relevant part provides "that the Court retain jurisdiction over the custody of the child for a period of one year from the entry of this order and the Court on its own motion may modify the physical custody of the parties' child without further notice." An essential prerequisite to the modification of a dissolution decree is notice to the party adversely affected. A modification without notice violates due process. Reasonable notice sufficient to meet the requirement of due process must be served on the adverse party or his attorney. Mo. Const. Art. 1, § 10; Butler v. Butler, 698 S.W.2d 545, 550 (Mo.App.1985). Moreover, § 452.455.2 (RSMo 1986) provides that:
"Before making a decree under the provisions of section 452.410, or sections 452.440 to 452.450, the litigants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child must be served in the manner provided by the rules of civil procedure and applicable court rules."
This decree attempts to eliminate a necessary element of the due process requirement. We, therefore, modify the dissolution decree by removing that part of the decree allowing the trial court to modify the decree without notice to the parties.
The decree of dissolution was filed on November 4, 1988, and appellant timely filed an appeal on December 17, 1987. On January 20, 1988, respondent filed a motion to amend the decree, requesting physical custody of C.P.G. be transferred to him and the order for child support payments to appellant be terminated. On February 1, *378 1988, Mr. Charles Niedner entered his appearance on behalf of appellant and argued against the motion to amend the decree asking that the court hold an evidentiary hearing and to change the motion to a motion for a modification because of changed circumstance. Later the same day Mr. Niedner motioned the court to withdraw from the case and the motion was granted on February 19, 1988. The motion was set for argument on March 10, 1988. Prior to the hearing, appellant, by her new attorney, filed a response to the motion. The response challenged the courts jurisdiction to modify the decree claiming that appellant was not properly served with notice of the action. Appellant failed to appear at the hearing on March 10 and the trial court modified the decree changing the custody of C.P.G. to respondent and terminating respondent's obligation to pay child support to appellant.
Appellant appeals arguing that the trial court did not have jurisdiction over the action because she was never served with notice of the action. Respondent argues that Mr. Niedner's appearance on appellant's behalf at the February 1 hearing waives any challenge to lack of personal jurisdiction. Appellant contends that she had discharged her attorney, Mr. Niedner, prior to the February 1 hearing, therefore, any appearance before the court on his part was beyond his scope of authority. The only evidence presented in the record consists of statements made in appellant's brief and a letter written by Mr. Niedner to appellant stating: "In accordance with our telephone conversation of January 29, 1988, I am hereby enclosing motions to withdraw from any further representation in both the appeal and the motion to amend the divorce decree." Appellant has the burden of affirmatively establishing reversible error and has the duty of providing an appellate court with a record containing everything necessary to the determination of the issues presented it. Hempe v. Cape, 702 S.W.2d 152, 157 (Mo.App.1985). The record presented to this court is insufficient to make a determination as to whether Mr. Niedner was acting on the part of appellant. It is appellant's duty to supply a record from which we can make a determination. Having supplied the trial court and this appellate court with an insufficient record we cannot find error on the part of the trial court in determining that Mr. Niedner was appearing under appellant's authority. Id.
Having determined that Mr. Niedner was appellant's attorney on February 1, we now must determine whether this appearance waived appellant's right to attack the jurisdiction of the trial court for lack of personal service. Rule 55.27(g) provides that a defense of insufficiency of service of process is waived if it is omitted from a motion or responsive pleading. At the February 1, 1988 hearing in response to respondent's motion, Mr. Niedner raised the following defenses: 1) the court lacked subject matter jurisdiction; 2) the matter should be stayed during the appeal of the original decree; and 3) the respondent had requested the improper remedy. Moreover, Mr. Niedner affirmatively asked the court to grant appellant an evidentiary hearing. Under these facts appellant waived her right to challenge the lack of service of process under Rule 55.27(g).
Appellant also contends that the trial court should have stayed proceedings on the motion pending the outcome of the appeal and a custody proceeding filed in Arkansas.[1] We find this point to be without merit. Rule 81.09 denotes when an appeal shall stay an execution. Rule 81.09 provides:
Appeals shall stay the execution in the following cases: (1) when the appellant shall be an executor or administrator, guardian, or curator, and the action shall be by or against him as such, or when the appellant shall be a county, city, town, township, school district, or other municipality; (2) when the appellant, at or prior to the time of filing notice of appeal, presents to the court for its approval a supersedeas bond which shall *379 have such surety or sureties as the court requires.
Appellant admits that the filing of a notice of appeal does not automatically stay execution on a judgment during the pendency of the appeal. Moreover, although a motion to modify a decree of custody continues from the original action, such a petition constitutes an independent proceeding. Burchett v. Burchett, 572 S.W.2d 494 (Mo. App.1978).
Appellant further contends that the court lacked subject matter jurisdiction to hear the case because the child had been outside of the state for more than six months prior to the filing of the motion to modify. Section 452.450 provides that a court has jurisdiction to modify a decree if this state was "the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason and a parent or person acting as parent continues to live in this state." The record indicates that appellant moved out of Missouri on August 1, 1987 and that the motion to modify was filed January 20, 1988. The motion was filed a full 11 days prior to the end of the six months time frame set out by the statute. Appellant argues that the six month time elapsed because three weeks prior to leaving for Arkansas she moved out of the marital home and into a motel in Missouri while planning her move to Arkansas with C.P.G. Even though she had moved out of the marital home she remained domiciled in the state in compliance with the statute. We find that the trial court had subject matter jurisdiction under § 452.450.
Appellant's final contention is that the trial court erred in entering a default judgment and modifying the decree by: (1) Failing to examine all pleadings and information supplied by O.J.G. to it, including filed objections and defenses and copies of letters from psychologists sent directly to the trial court; (2) failing to inform the chancery court of Garland County, Arkansas of the default judgment; and (3) awarding greater and different relief in the default judgment other than that requested in the respondent's motion. Section 452.465 provides that "Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties." Further "If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court in order that issues may be litigated in the more appropriate forum." Once again the record appellant has presented this court is devoid of any competent evidence from which we can find any error. Hempe v. Cape, 702 S.W.2d 152, 157 (Mo.App.1985). As to whether greater relief was granted than was requested, all the relief granted is consistent with the court's authority under § 452.375. We find no error on the part of the trial court.
The opinion of the trial court is affirmed in part and modified in part.
GRIMM, P.J., and KAROHL, J., concur.
NOTES
[1] Appellant filed an action for custody of C.P.G. in the Chancery Court of Garland County Arkansas on February 23, 1988. The outcome of the suit is still pending.